## WILLS LOST OR SPOLIATED.

[Probate Court of Hamilton County.]

### ESTATE OF JOHN McCORMICK GIBSON, DECEASED.*

Decided, February 7, 1903.

*Will—Right to Probate is Purely Statutory—Lost or Spoliated Will—
Evidence Must Establish that the Will Was Unrevoked—And in
Tangible Existence—Subsequent to the Death of the Testator.*

1  The right to probate a last will and testament is purely statutory, and a person claiming such right must present facts which come clearly within the provisions of the statute.

2  Revised Statutes of Ohio, Sections 5944 and 5947, provide for the probate of lost, destroyed or spoliated wills. The evidence offered in support of the probate of such wills must establish as a fact, among other things, that the will was *unrevoked,* and that the will was in actual tangible exisence subsequent to the death of the testator, and that it was thereafter lost, spoliated or destroyed; even if the will was unrevoked, it can not be admitted to probate

---

* Affirmed by the Common Pleas Court, November 9, 1903; affirmed by the Circuit Court, January 16, 1904.

unless its tangible existence was established subsequent to the testator's death.

3. The fact that the testator inquired, upon the occasion of his marriage, eight days before his death, whether or not marriage would affect his will, can not alone prove that the will was *unrevoked* at his death—and, more especially, can not establish the tangible existence of the will subsequent to the testator's death, and that it was thereafter lost, spoliated or destroyed.

Application of Henrietta Cecelia Gibson to admit to probate the alleged last will and testament of John McCormick Gibson, deceased.

The facts are sufficiently stated in the opinion of the court.

Lawrence Maxwell, Jr., Charles P. Brown and Joseph S. Graydon, for proponent, cited:

*Feuchter* v. *Keyl,* 48 O. S., at p. 368; *Banning* v. *Banning,* 12 O. S., at p. 456; Revised Statutes of Ohio, Section 5948; Revised Statutes of Ohio, Section 5953; *Kent* v. *Mahaffey,* 10 O. S., 204, at p. 217; *Sugden* v. *Lord St. Leonards,* L. R., 1 Prob. Div., 154; *In re Blymyer,* Goebel's Prob. Rep. (Ohio), 14; *In re Wiswell,* Goebel Prob. Rep. (Ohio), 19; *Schultz* v. *Schultz,* 35 N. Y., 653; *In re Marsh,* 45 Hunn., 107; *In re Harris,* 10 Wash., 555; *In re Lasance,* 5 N. P., 20; *Page* v. *Maxwell,* 118 Ills., 579; Thornton on Lost Wills, Section 58.

Thomas B. Paxton and Thomas B. Paxton, Jr., for the heir at law, cited:

The tangible existence of a will at a time subsequent to the death of the testator is contemplated by the Ohio Statutes:

Revised Statutes of Ohio, Sections 5944 and 5947; Kinkead Prob. Law & Prac., Section 150; Rockell's (1903). The Complete Ohio Prob. Prac., Section 1134 and Section 1140; *In re Sinclair* (1855), 5 O. S., 290; *Converse* v. *Star,* 23 O. S., 492; *Behrens* v. *Behrens,* 47 O. S., 330.

The law is similar in other jurisdictions:

*In re Kennedy,* 167 N. Y., 163; *In re Reiffeld* (1901), 73 N. Y. Supp., 808; *In re Kidder* (1881), 57 Cal., 282; *Shacklett* v. *Roller* (1889), 97 Va., 639.

Declarations of testator, except to show his mental *capacity,* are inadmissible in this proceeding:

Schouler on Wills, Section 317a; *Throckmorton* v. *Holt,* 180 U. S., 552; *In re Kennedy,* 167 N. Y., 163; *Atkinson* v. *Morris* (1897), Prob., 40; *Breck* v. *State,* 4 O. C. C., 160; *Schierbaum* v. *Schemme* (1900), 157 Mo., 1; *In re Gordon* (1892), 50 N. J., Eq., 397; *Leslie* v. *McMurtry* (1895), 60 Ark., 201; *In re Noyes,* 61 Va., 14; Redfield on Wills, 559; *Henry* v. *Hall,* 106 Ala., 84; *Patrick* v. *Jenkins,* 96 Tenn., 85; the case of *Sugden* v. *Lord St. Leonards,* L. R., 1 Prob. Div., 154, is no longer authority in England; *Woodard* v. *Goulstone* (1886), 11 App. Cas., 469; *Atkinson* v. *Morris* (1897), Prob., 40; the Sugden case criticised in *Throckmorton* v. *Holt* (1900), 180 U. S., 552; *Clark* v. *Turner* (1897), 50 Neb., 290.

Courts lend an unwilling ear to statements of what dead men have said:

*Lea* v. *Polk County,* 21 How., 493; *Scheerbaum* v. *Schemme,* 157 Mo., at p. 16; *Mima Queen* v. *Hepburn,* 7 Cranch, 290; *Commissioners* v. *Keene,* 108 Fed., 505.

A presumption can not be based upon a presumption:

*Insurance Co.* v. *Garish* (1896), 163 Ills., 625; *Richmond* v. *Aiken* (1853), 25 Vt., 324; *Corthell* v. *State* (1899), 18 O. C. C., 598; *United States* v. *Ross,* 92 U. S. ——.

Those who found a right upon the fact of a person having survived a particular period, must establish that fact by affirmative evidence; no presumption will be resorted to:

*Y. W. C. H.* v. *French* (1901), 187 U. S., 401; *Trust Co.* v. *Ins. Co.* (1900), 105 Wis., 464; *In re Phene,* L. R., 5 Ch., 139; *Nepean* v. *Knight,* 2 M. & W., 894.

The degree of proof required to "satisfy" under Revised Statutes of Ohio, Section 5947:

*Kelch* v. *State* (1896), 55 O. S., 146, at p. 152; *Beresford* v. *Stanley,* 6 N. P., 38; *Allen* v. *Morrison* (1900), A. C., 640; *In re Willett's Estate,* 46 Atl. Rep., 519.

NIPPERT, J.

The testimony offered in this case, and material for decision, is as follows: John McCormick Gibson, of Cincinnati, Ohio, had been for some time in the city of Ashville, N. C., for his health. In the month of April, 1902, he executed a will,

which has been since lost or destroyed. Miss Henrietta Wolf, accompaned by her sister, arrived in Ashville at about 3 o'clock A. M. on November 1, 1902; on the afternoon of the same day at about 4 o'clock, in response to the request made by the sister of Miss Wolf, the attorney who drew Mr. Gibson's will in the previous April, accompanied by a magistrate, arrived at the hotel where the invalid lay. The latter married Miss Wolf and Mr. Gibson. The will was last seen immediately after the ceremony on a table in the nurse's room, next to the one occupied by the sick man. It was in an envelope, and was placed there by Mr. Wells, the attorney who drew the will and who also procured the marriage license. The will was seen there by a number of witnesses. It was placed on the table and shortly after the marriage ceremony Mr. Gibson asked Mr. Wells if on account of the marriage it was necessary to make any change in the will. It was further shown that Mr. Gibson, owing to his physical condition, did not leave his couch from that day until the day of his death, to-wit, November 8, 1902. The testimony is almost conclusive in establishing the fact that there was always some one in attendance in one of the two rooms during the last week of the earthly existence of John McCormick Gibson, and also the fact that he never spoke to any of his attendants in relation to the will. The fact of his informing his fiance by letter that he had a will in her favor, and his request that she keep that letter, also the fact of his instructions to the nurse, Miss Buckler, to whom he handed the will after its execution, are matters occurring so remote from the time of his death as to have little or no weight in influencing the court on the two points at issue.

It may be remarked at the outset that the subject of the probate of lost or spoliated wills has been given meagre consideration by the authorities on the subject of wills. [The learned judge here traces the origin of the right to dispose of property, both real and personal, by last will and testament, and the law of administration upon decedents' estates.—EDITOR.] In our own state the question as to whether a court of chancery could properly entertain jurisdiction to set up and establish a lost or destroyed will was first considered in the case of *Morningstar* v. *Selby* (1846), 15 O., 345, and it was there decided adversely to such jurisdiction. The

opinion in the above case seems to have been influenced by the decision *In re Hunter* (1844), 6 O., 499, and in *Swazey* v. *Blackman,* 8 O., 19.    After the decision in the case of *Morningstar* v. *Selby, supra,* the Legislature at its next session passed an act (46 O. L., 66), which is practically identical with Section 5947 of our present Revised Statutes, upon which proponents rely in this proceeding. The law above referred to was prefaced by the following preamble:

"Whereas, doubts exist whether by virtue of the provisions of the act relating to wills, etc., the courts of common pleas, as courts of probate, have power to take the proof and admit to probate duly executed last wills and testaments, which have been lost, spoilated or destroyed, but not revoked, and which can not be produced for probate; therefore, for the purpose of removing all doubts, upon that subject."    *    *    *.

Shortly after the enactment of this law (46 O. L., 66) the Supreme Court had occasion to construe the same, and their opinion is found in the case of *In re Sinclair* (1855), 5 O. S., 291. This decision of the Supreme Court is conclusive on the law of the case at bar.    [Here the learned judge quoted at length from and adopted the language of Judge Swan.]    Again in the case of *Behrens* v. *Behrens,* 47 O. S., 330, Judge Dickman in the course of the opinion said:

"If the will did not exist at the time of the testator's death, and had been destroyed prior to that time, it could not be established under the statute as a will of which the original had been lost, spoliated or destroyed, subsequent to the death of the testator."

Judge McIlvaine, in the case of *Patton* v. *Patton,* 39 O. S., 596, in answering the argument that the right of a citizen to dispose of his property by will is a constitutional right, which the Legislature can not destroy or abridge, says:

"We concede the right to acquire property implies the right to dispose of it.    But the inalienable rights here declared, as well as those implied, are possessed by those living, not by dead men.    A disposition by will does not take effect during the testator's life, but operates only after his death."

To the same effect see *State* v. *Ferris* (1895), 53 O. S., 314. From the authorities cited it is plain that the right to dispose of property by will is purely statutory.    We find upon examination

(Revised Statutes, Section 5944 *et seq.*) that the right to probate wills lost, spoliated or destroyed, subsequent to the death of a testator, is the subject of very exhaustive legislation, more minute than the legislation upon original probate matters, and to entitle such wills to probate the facts presented must come clearly within the provisions of the statute. Paige on Wills, p. 421.

By the provisions of Revised Statutes of Ohio, Section 5947, the court must be satisfied on a number of jurisdictional facts, the ultimate two of which are: First, that the will of John McCormick Gisbon was unrevoked at the death of the testator; second, that the same was lost or destroyed subsequent to the death of John McCormick Gibson.

I am asked to presume that because the will was unrevoked on November 1st (and it no doubt was, according to the question asked by Mr. Gibson of Attorney Wells on that day), and was not seen since that day, that it was not revoked and was in existence at the death of the testator. This is contrary to the ruling of Judge Dickman in the case of *Behrens* v. *Behrens, supra,* in which the learned judge said:

"The presumtion is that if a will be not found after the death of an alleged testator, it was destroyed with the intention of revoking it."

While the court may well presume that the evidence indicated at that time the feeling of Mr. Gibson, yet the court can not further presume that this feeling existed up to the time of his death. Admitting that the question asked of the attorney is a slight circumstantial fact, which, taken together with other facts—had they been established—might have overcome the presumption of law, referred to above, still, taken by itself, it does not satisfy the court that the will was not revoked at the time of the death of the testator; and more especially it can not be said to establish the fact that said will was *lost* or *destroyed subsequent* to the death of the testator.

But going further, and even conceding that the will of John McCormick Gibson had not been revoked at the time of his death, where is the evidence which would satisfy the court that the will existed subsequent to the death of the testator? Is it not remarkable that no one made any inquiries during an entire week

in regard to the whereabouts of the will? A number of people entered the rooms in which Mr. Gibson spent his last days after the will had been placed on that small table, and none of them noticed the instrument on the table, nor any thing resembling the same. Is this not a circumstantial fact which strengthens the presumption of law, that the will was destroyed before the death of John McCormick Gibson? The court does not intend to insinuate that any one was prompted to destroy the will by impure motives, but it might have been destroyed through the negligence or carelessness of some of the parties who had access to the room.

At all events this court has· no proof by which it is satisfied that the will existed subsequent to the death of the testator, and was unrevoked at his death, and until both of these facts are established to the satisfaction of the court, the application to admit to probate the last will of John McCormick Gibson must be refused.

*Lawrence Maxwell, Jr., Charles P. Brown* and *Joseph S. Graydon,* for proponents.

*Thomas B. Paxton* and *Thomas B. Paxton, Jr.,* for the heir at law.

The case above reported was taken to the common pleas court, where, in November, 1903, Hollister, J., filed the subjoined memorandum opinion:

HOLLISTER, J.

The court is of opinion that it is necessary under the statute permitting the probate of a lost will, for the proponent to prove as an affirmative fact that the will was lost at a time subsequent to the testator's death. This the proponent has failed to make clear. This will may have been revoked, or lost or destroyed at some time during the seven days which lapsed between the day the will was last seen and the day on which the testator died.

The application for probate is dismissed.